request for a preliminary injunction to halt an unconstitutionally structured administrative proceeding against it. The district court effectively denied our motion for injunctive relief by not ruling on the motion for over three and a half months, even though the administrative proceeding was moving forward. Under this court's precedent, SpaceX is entitled to a preliminary injunction. As we've explained in our briefs, there are several paths to that conclusion, but the simplest one is this. The ALJs who are presiding over the NLRB proceeding against SpaceX are insulated from the president's control in violation of the separation of powers. The president can't remove those ALJs except by overcoming three layers of four-cause removal protection. Under this court's binding decision in Jarkissi, this interference with the president's removal power violates Article 2. And under this court's binding en banc decision in Cochrane, this injury is sufficiently serious to justify pre-enforcement review. Only a preliminary injunction can provide effective relief for this constitutional injury because, as the Supreme Court held in Axon, this injury is impossible to remedy once the proceeding is over. Now, I know the court takes its jurisdiction very seriously, so I'd like to quickly turn to jurisdiction before returning to the merits of the appeal. In this case, the NLRB moved to dismiss the appeal at the very beginning of the proceedings, and the motions panel denied the motion to dismiss, and I think for very good reason. It has long been the law of the circuit and others that failing to rule on a preliminary injunction motion can effectively deny the motion and support appeal under Section 1292A. That's been the law for over 60 years, and we clearly meet the requirements for an effective denial appeal. Here, we filed our preliminary injunction motion about a week after we filed this lawsuit, which we in turn filed a day after the NLRB issued its administrative complaint against us. In the motion back in January, we cited our need for relief by the projected start of the administrative hearing, which was then scheduled to start March 5th. We asked the district court to rule on the PI motion together with the motion to transfer, that's at ROA 608 back in February, so that we were ensured relief before the start of the administrative hearing on March 5th. And then we again requested a ruling by that date in our preliminary injunction reply brief at ROA 955. And then, of course, we requested the same deadline when we sought mandamus relief from the transfer order back in on February 16th. Now, unfortunately, a variety of procedural complications precluded the district court from issuing relief by March 5th, but none of which had anything to do with SpaceX. First, the district court immediately initiated transfer on February 15th, and then the California district court docketed the case despite this court's stay of the transfer. This court then directed the district court to request a retransfer, and it took four days for that to happen. And then the case wasn't actually back until March 5th, which is when the panel ruled on the petition for mandamus. This court then gave serious consideration to granting the petition for rehearing en banc from our petition for a writ of mandamus, but ultimately denied relief by an At that point, we immediately, same day, asked the district court to reconsider its transfer ruling or rule on the PI motion before effecting transfer without any further delay, ROA 1132. Then, when we discovered that a new ALJ had been assigned and would start issuing significant rulings on the party's expansive discovery disputes, we asked for relief before that scheduled hearing. And I just want to note for the record that we found out about that appointment of the second ALJ, a special master, on April 24th, and the special master hearing was scheduled to start on May 2nd. And we filed our reply in support of reconsideration two days later, saying that we needed relief by May 2nd. And I also want to just clarify one point from the briefing. The NLRB says in its brief on page 14 that SpaceX had participated in two teleconference with the ALJ acting as special master before our appeal, but that's a misstatement. And in fact, the NLRB itself filed a letter, docket 28, earlier in the appeal clarifying that those prior teleconferences weren't with the special master ALJ who was going to be resolving the discovery disputes, but were in fact two prior teleconferences with the other ALJ that happened actually before March 5th, and they were administrative in nature. In contrast, the ALJ special master was preparing to rule on very significant discovery disputes. The parties had submitted over 600 pages of briefing on those issues, and so we needed relief before May 2nd. And we waited as long as we felt we could for a ruling by the district court before asking this court to rule on an emergency basis. And this court then turned around a ruling within 24 hours, and so I think we waited as long as we possibly could have to get relief before that May 2nd hearing. Let me turn then, if there are no questions about the effect of denial or the procedural history, to our first claim for relief. Well, I guess I have a question because I thought you told the district judge that you needed a specific decision by May 2nd. Is that right? Yes. In our reply in support of reconsideration, that's the date we selected. But then you filed a notice of appeal where you claim effective denial. You filed that on April 30th. Yes, we did. After the close of business, I think it was about at 10 p.m. at night, and we did that because we knew it was going to take some time for the clerk's office to docket our appeal. And then, of course, this court can't spring into action on an emergency basis instantaneously. So we thought waiting and only giving this court 24 hours to rule on our emergency motion for an injunction pending appeal was pushing the limit as far as we could in terms of request. Well, but you had told the district court that you needed a decision by May 2nd. Then you filed something on April 30th saying you've been effectively denied. So you needed a decision by April 30th. Well, we needed a decision before May 2nd. That's certainly true. But this is exactly, I think, the same sequence of events that the court considered in NAACP versus Tyndall, where it was a January or New Year's Day deadline that the movement was asking for relief by. And then they filed their effective denial appeal. I think it was on December 30th, so two days earlier. So I think that, you know, the court can't issue our emergency motion or can't grant an emergency motion instantaneously. What was the most relief that could have been granted at the hearing on May 2nd? We expected that the court, I'm sorry, that the ALJ might actually rule from the bench on some of these discovery disputes that would change. Discovery disputes, but you would have time to comply, right? You wouldn't be held in contempt. What would the nature of the rulings have been at the May 2nd hearing? They would have been in the nature of discovery requirements. But the point of our entire ALJ removal protection challenge is that we're entitled to have our administrative rulings made by a constitutionally accountable ALJ. And once those rulings are made, I think it's very clear from some of this court's cases and other courts' cases that you can't go back and unwind those rulings because of a removal protection problem. The only chance you have for getting effective relief is to do so on the bench. Well, you could have asked the district court once the, if the district court hadn't ruled there had been a hearing in the ALJ and said, okay, comply with these discovery requirements. Then you could have gone to the federal district court and said, look, we're being subjected to all this discovery. These discovery requests, they've been granted by the ALJ. We don't think the ALJ was properly appointed. I mean, this district court would still have had time to issue a preliminary injunction, wouldn't it? Well, not in a way that would have affected those rulings. I think those ones... Why couldn't the ALJ, why couldn't the district court stay that discovery, stay all proceedings at the NLRB, including the discovery? Oh, because the court's jurisdiction under Axon has to be collateral to the issues being decided by the administrative agency. We can't go in the federal district court on any ground and ask for a reversal of particular administrative rulings. We have to wait... A collateral request would be that the ALJ is improperly appointed. And the immediate need for a preliminary injunction would be that you've already been subjected to these discovery requests. I don't see how that would render your request, your underlying claim collateral, not collateral rather. I'm having a hard time seeing why you couldn't have waited even after the ALJ issued a discovery order. It was not like that would be the end of your administrative proceeding. It wouldn't have been the end of the administrative proceeding, but there would have been no way to avoid those orders. I mean, we did request that the district court issue relief before the March 5th deadline, and that didn't happen. And we had no way of knowing when, if at all, the district court would get around to ruling on the preliminary injunction motion after May 2nd. But the court's decision in Cochran says that the reason why there must be jurisdiction over these types of challenges is that there is no effective way to get relief after the agency officials have started issuing rulings. We can't satisfy the demanding requirements to vacate agency decisions based on removal protections because that is a very difficult showing involving proof that the president would have actually exercised his removal power with respect to the agency official before the agency rulings were made. I think there's also a clear reason why the government is relying so much on its procedural objections to this appeal, and that's because it's clear under this court's precedent, as I said at the outset, that the ALJ's process of the NLRB is unconstitutional under this court's precedent. There have been three district court decisions from within this circuit that have enjoined NLRB proceedings on this ground. We've cited them in our brief, the SpaceX case from the Western District of Texas, Energy Transfer, and Bertha. And we also cited a supplemental authority, a recent decision from Judge Lake in the Southern District of Texas dealing with DOL, ALJs, and the ABM case. I think that that conclusion follows very straightforwardly from this court's jarcossi ruling. And... Counsel, but you're saying they're relying on this procedural question because you went on the merits. I mean, that sounds to me about like the argument that, well, procedure doesn't matter if I went on the merits. So just skip right over procedure. You participated in two earlier teleconferences with a different ALJ, isn't that right? Yes. As I said before, those were administrative in nature, and they occurred before the March 5th hearing. So you didn't raise any concern about how the appointments were made or how it was, the construction of it. You didn't raise any concerns about that then because they were administrative? No, we had already filed a motion for a preliminary injunction before then. And we had asked the NLRB to postpone all of its proceedings in order to allow the district court time to rule on a preliminary injunction motion. But the NLRB refused to do that at all. It was only after March 5th that the original ALJ decided to postpone the live witness testimony portion of the NLRB proceeding to allow the second ALJ time to issue the discovery rulings that would the scope of the administrative record in this appeal. So there's no possible argument that we were waiting to request timely relief. As I said before, we filed this lawsuit a day after the administrative complaint came down. And about a week after that, we filed a request for a preliminary injunction motion. So I'm not trying to duck the procedural issues at all. I just don't think that they're a basis for avoiding merits. Council, for your constructive denial argument, you have appeared to rely on the repeated requests for relief prior to the March 5th hearing and said that unfortunately you didn't get it. Is the fact that you didn't get it premised on the ongoing litigation in which SpaceX participated regarding venue? Or can you point to parts of the record that show actions by the court that would reflect a deliberate effect to deny or a deliberate effort to deny injunctive relief? Well, I think that the transfer itself made it impossible for the district court to grant relief until the transfer was unwound, at least temporarily, on March 5th. Because as I mentioned before, the transfer order was not stayed. It immediately was initiated. This court then stayed transfer. But by then, the process was already underway and the Central District of California was proceeding to docket the case. So it wasn't in the District Court of that point. And the district judge couldn't have issued a ruling on our preliminary injunction motion in between that initiation of the transfer and the return of the case. And so it was only after March 5th, when the case returned to the Southern District of Texas, that Judge Olvera would have been able to grant the preliminary injunction or rule on the preliminary injunction. And then that continued up through April 30th, when we filed our notice of appeal. All that time, the district court could have ruled on the preliminary injunction motion, and there was nothing preventing it. In the Fort Worth Chamber case, there was attention paid to the fact that the court invited additional briefing sui sponte on an issue that had not been raised by the parties. Can you point to anything that the district court did hear that would show any intent or effort to delay a ruling or to deny a preliminary injunction in this case? There wasn't an affirmative act like that Your Honor mentioned in Fort Worth Chamber of Commerce, but there was about a two-month almost delay between the return of the case and our notice of appeal in which the failure to act would constitute the effect of denial. And in other cases, the failure to act alone has been sufficient to support an effective denial appeal like the Clark case and the NLACP case that I mentioned earlier. I see I'm out of time. I'm happy to answer other questions, but I want to overstay my welcome. All right. I don't hear any other questions. Mr. Weiss? Thank you, Your Honor. Tyler Weiss on behalf of the NLRB and other named NLRB defendants. I'd first like to touch on the effective denial arguments here. And as we had discussed earlier, an effective denial requires two elements. And the one that I'd first like to focus on is the irreparable consequence that would result if appellate jurisdiction were not held to be in place. And specifically, what SpaceX has tied its effective denial to is a routine conference call with an administrative law judge to resolve discovery disputes. I can speak from experience having sat in on dozens of conference calls with ALJs. Those are situations in which the parties discuss scheduling issues, when briefs are going to be filed, addressing routine trial issues. There certainly isn't any argument, and Amazon certainly hasn't established how that routine conference call before an administrative law judge represents irreparable harm. And in particular, I would direct this court's attention on that front to the decision in EEOC v. Kerryville Bus Company, which involved a similar attempt by a party to enjoin administrative proceedings. And because those proceedings were ongoing, the plaintiff was arguing that there was an effective denial of relief. And this court rejected that argument, finding that there was no irreparable consequence, and held that the burdens, and particularly the potential expense of litigation, are not sufficiently serious to warrant interlocutory appeal. And while I would agree with opposing counsel in some respects that SpaceX was more diligent than Amazon in raising its effective denial arguments, the harm requirement is not met in this case, because all Amazon is doing, or excuse me, SpaceX is doing, is creating an artificial deadline that has no consequence whatsoever. And I'd also like to touch on SpaceX's conduct a little bit in this case, as well as it goes to effective denial, because I think it's important to highlight. So after SpaceX got a transfer ruling to the District Court in California, it chose consciously not to seek an order on the merits of its case to try to prevent any irreparable harm, or supposed irreparable harm, from occurring by the proceeding going forward. Instead, it chose to seek an extraordinary writ of mandamus to review a transfer order. And then after that review was denied, SpaceX again had the opportunity to have the court proceed to the merits of the dispute in California. And again, instead of getting the prompt relief that it claims it was needed, it filed a request for review en banc on a writ of mandamus. And so SpaceX, to the extent that there's been delay in these proceedings and getting relief from a District Court, SpaceX is the one who's responsible for that, largely by conscious actions that it made, because it so strongly did not want this case to be in the District Court in California. So turning from the effective denial argument, I'd like to focus most of my remarks now on the ALJ removal issue. And so SpaceX is correct in asserting that under this court's decision in Jarkizi, that dual-layer removal protections for ALJs are unconstitutional. And we aren't going to I think there are some distinguishing factors between NLRB ALJs and SEC ALJs, but for purposes of this argument at this time, I'm not going to be emphasizing those. But the problem with SpaceX's argument as it goes to the removal protections is the lack of causal harm. Now, I think the best way to frame this argument is to look at what the Supreme Court said in Collins v. Yellen about distinction between unlawful appointments and unlawful removal restrictions. And I think there was some confusion earlier on that. But the Supreme Court made clear in Collins that if you have an unlawful appointment of an agency official, those actions are null and void from the outset. But the same does not apply to actions by agency officials where there's an unlawful removal restriction. The agency official has the power to act. That's clear. The Supreme Court said as much in Collins. But the question is, you know, what do you do with a hypothetical situation in which an official with the authority to act might be removed? How do you address that issue? And the Supreme Court established that the general relief for that is declaratory judgment severing those removal protections. And that to go anything beyond a declaratory judgment, you need to establish a three-part inquiry. And that's first, that there was a desire by the president to remove the agency official. Second, that that desire was thwarted by the statutory removal protections. And third, that there's some connection between a decision made in the particular case and the inability to remove the official. SpaceX hasn't come close to establishing any of these elements. And they were established by this court in the Community Financial Services Association case. And I think it's important to look at that case versus Cochran. And Cochran is the case that SpaceX has placed almost all the tags in terms of relief in this case. But the problem with doing that is that Cochran is a decision about jurisdiction. It's not a decision about relief. The court explicitly said that. All it was doing in that case is establishing whether the SEC's jurisdictional provisions stripped the district court of the ability to review removal restriction challenges. And this court held that it didn't. But it didn't go any further than that. It didn't decide what was required for substantive relief because it was a decision about jurisdiction. And CFSA, the Community Financial Services Association case that I was just talking about, occurred after Cochran. And they specifically outlined what is required for removal restrictions and it's that those, for relief for removal restrictions, and it's that those three elements must be met. And they aren't the only court who has held that. In fact, I would direct this court's attention to the Sixth Circuit decision recently in YAP Automotive, where the Sixth Circuit, dealing with identical removal challenges to those presented here, found that the Collins requirement applied in order to achieve injunctive relief. Specifically, the panel there found that in order to enjoin board proceedings, a plaintiff would need to demonstrate that the removal restriction, quote, caused harm, i.e. that it would specifically impact the upcoming proceeding. Second, the Sixth Circuit, in line with this court in CFSA, held that the distinction between prospective relief in the form of an injunction and retrospective relief, as was at issue at Collins, made no difference. Causal harm needed to be demonstrated in order to achieve a remedy. Third, the court there correctly recognized that Axon, and it's here and now injury language that SpaceX keeps relying on, was a decision about jurisdiction, and one that did not overrule Collins v. Yellen. In short, Axon establishes jurisdiction, but Collins sets the requirement for relief for a removal restriction provision. And fourth, and importantly, the Sixth Circuit found that the failure to prove causal harm both weighed or precluded any finding on the merits, but also on the irreparable harm aspect. And I think that's another important issue in this case, is that, you know, even if you assume that there is some sort of constitutional issue with the removal protections in this case, that doesn't satisfy the other factors required for a preliminary injunction. In particular, as we discussed in our briefing, courts have started to hold that not every constitutional violation constitutes irreparable harm. And I would in particular ask that the panel take a close look at Judge Bibas's decision that issued this summer out of the Third Circuit in the Even in cases where you have a constitutional violation, a constitutional violation standing alone should not be enough to establish irreparable harm. Among other things noted by Judge Bibas, he noted that an injunction, a preliminary injunction, is an extraordinary remedy. But if you collapse it into a merits inquiry, then that means in every constitutional case in which there's potentially a violation, then you're entitled to preliminary relief. It also removes the equitable discretion of the courts to decide whether or not a party is warranted to receive a preliminary injunction if all you say is you need to look at the merits and that's enough. And then the third point that Judge Bibas raises, which I think was particularly important, is that if you say that the merits of the dispute is enough to establish a preliminary injunction, that means that in every PI case involving a constitutional violation, the court has to prejudge the merits of the dispute. Whereas if you don't collapse it into a single-factor inquiry, the court could, for example, decide, okay, you know, we aren't going to firmly decide whether there's been a constitutional violation or not in this case because plaintiffs have not been able to establish irreparable harm. And that's exactly what SpaceX has here. They haven't presented certainly any affirmative evidence that there's irreparable harm occurring. All they rely on is jurisdictional language in Axon and Cochran, which, as I discussed earlier, have nothing to do with the actual requirements for relief under a removal restriction. And I'd also like to point out that as to this irreparable harm discussion, and I know we've been focusing on Judge Bibas's decision, but the Third Circuit is not the only circuit to have held this. There's the 11 circuits en banc decision in Siegel, which held the same thing, that constitutional violations are not per se irreparable harm. The same was held by the First Circuit in a public service decision cited in our brief. And then the Seventh Circuit as well in Wheeler. All of those decisions say that outside of the First Amendment and certain privacy contexts, which are the cases that SpaceX has relied on for its harm argument, outside of that context, you should not, you can't simply say that you have per se irreparable harm because you can point to some violation of the Constitution. And that should apply here, and standing alone should be enough to preclude SpaceX's relief. I would also direct the Court's attention to the Supreme Court's decision in Benesik, which is also cited in our brief, but we didn't quote this specific language. That case involved a constitutional challenge to voter redistricting claims, and in part, you know, plaintiffs were seeking to have some sort of redistricting enjoined. And in the context of that constitutional claim, the Supreme Court held, and I quote, and this is that, as a matter of equitable discretion, a preliminary injunction does not follow as a matter of course from a plaintiff showing of likelihood of success on the merits. Rather, a court must also consider whether the movement, the movement has shown that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equity is tips in his favor, and that an injunction is in the public interest. And so, setting aside, you know, whether there is an actual constitutional violation in this case, Amazon's claim for injunctive relief should, or excuse me, SpaceX's claim for injunctive relief should be denied because of the failure to establish irreparable harm. One other point that I'd like to raise that applies to both cases here is the Norris LaGuardia argument. And the Norris LaGuardia Act, as we discussed in our briefing, prohibits courts, this is section 107 of the act, prohibits courts from issuing an injunction in any case involving or growing out of a labor dispute. Section 113 of the act, in turn, broadly defines a labor dispute as including any controversy concerning terms or conditions of employment. So, terms of the statute are exceptionally broad in terms of prohibiting injunctions. What the statute says is that if you have a labor dispute, district courts generally should not enjoin it unless there's certain procedural requirements that are met. And none of those have been met in this case. And in interpreting the Norris LaGuardia Act, the Supreme Court has made a couple of key decisions. The first is the New Negro Alliance case in which it said that you don't need an employer-employee relationship between the parties to the case in order to find that the Norris LaGuardia Act's prohibitions apply. In that case, I believe it was community members who were engaging in hand-billing and perhaps even picketing outside of a grocery store. They weren't in an employer-employee relationship with the grocery store, but the Supreme Court still struck down an injunction against that picketing. Second, it also does not require the dispute to be directly related to matters about employment. It can involve labor disputes that arise out of political controversies. For example, the Jacksonville bulk terminals case in which the basis of the dispute was a claim by the union that it didn't want to handle Soviet goods because of disputes that were going on in Afghanistan at the time. And the employer attempted to argue, well, look, this isn't a case involving employment. This is a political dispute between the union and the Soviet Union. We don't have anything to do with this. We should be able to enjoin it. And again, the Supreme Court said no, that because the dispute itself, at least tangentially, I think the term was within the matrix of an employer-employee relationship, that the Norris LaGuardia Act prohibited that conduct. And the fact that the immediate case that SpaceX is attempting to enjoin is between the NLRB and SpaceX as opposed to a case directly between employees and SpaceX is of no moment. And in terms of authority for that position, I would direct the court's attention to the United Steelworkers v. Bishop case, which in that case, it involved an attempt by a supplier to recover materials from a customer. The customer was facing a strike by its union. And as part of that replevin action, the district court enjoined the strike activity of the union. And the union went back and challenged that. And the Fifth Circuit held that, yes, that injunction was improper under the terms of the Norris LaGuardia Act, even though it didn't involve a case specifically between the union and the employer, because the replevin action and enjoining the labor dispute ultimately involved enjoining labor activity that was covered by the Norris LaGuardia Act. And so in our view, the Norris LaGuardia Act serves as, I guess, I would characterize it as a backstop against any injunction issuing in this case. And that's setting aside the issues of jurisdiction, the issues of effective denial, the issues of Amazon's, excuse me, SpaceX's failure to establish causal harm for the removal restrictions, and the fact that SpaceX, so they point out the fact that there were three district court decisions in Texas that have enjoined NLRB proceedings. Those decisions are on appeal and will be heard shortly by this court in the appropriate posture, meaning we have district court decisions in all of those cases. The parties appealed those decisions in due course. And so the issues that are present in this case will be coming before this court, and the court will have an opportunity to pass on them, but it shouldn't pass on them in the circumstances of this effective denial appeal based off of illusory harms tracked to an artificial deadline created by Amazon. And I would direct, I would also draw to the court's attention a decision that issued out of District of Columbia last night, actually, on the Norris LaGuardia issue in particular, in which the DDC agreed with the board in a persuasive analysis, and the case number is 24CV2577, in which it held that the terms of the Norris LaGuardia Act do apply to litigation like what we have going on here, where a party is trying to enjoin NLRB proceedings based off of a labor dispute between its employees and the employer. And the court very straightforwardly held that the Norris LaGuardia Act prohibits any injunction from issuing in those circumstances. So just in closing, this court should find that there is no jurisdiction for this appeal, as there has been no effective denial of relief. SpaceX did not diligently press its claim for relief, instead choosing to spend its time and resources challenging the transfer action. And the action upon which it ties its effective denial, a routine conference call with an ALJ in the nascent stages of an administrative proceeding, does not cause serious, perhaps irreparable harm. Unless the court has any questions, I'll conclude my remarks and... Thank you, counsel. Okay. And I would ask that the case be denied for, or the appeal be denied for lack of jurisdiction. Thank you. Mr. Kenealy? Thank you, Your Honor. I think Mr. Weiss is continuing to fight the binding case law in Cochrane and Axon that holds that a proceeding that has already happened cannot be undone, and that the same claim that we're raising here, exactly the same ALJ removal protection claim, cannot be remedied after the proceeding is over. So Mr. Weiss's arguments that there aren't any irreparable consequences to the proceeding going forward while our motion for injunctive relief remains unresolved is exactly contrary to the Supreme Court's decision in Axon. How can something that cannot be remedied once the proceeding is over not be irreparable unless one court or another rules on the motion to stop that proceeding from going forward? And we didn't know on April 30th or May 1st or May 2nd what the ALJ was going to do in that hearing, but for all we knew, the ALJ could have ruled on all of the discovery disputes and then handed the case back. We would then have no way of preventing that insulated from removal ALJ from having an effect on the course of the proceedings at that point. And so for that reason alone, I think the court clearly has jurisdiction under the effective denial precedent. And for the same reason, that injury of having to appear before and be subjected to rulings by an insulated ALJ is irreparable. I think it's almost definitionally true that an injury that's impossible to remedy once the proceeding is over is irreparable injury unless a court prevents it from happening. And that's why those cases that I've cited from the Fifth Circuit district courts have all held that an injunction can be granted on these grounds under this court's Cochran decision. And Mr. Weiss says that Cochran's irrelevant because it deals with jurisdiction, but again, he doesn't explain any basis for differentiating between an injury that's irreparable for purposes of jurisdiction from an injury that's irreparable for purposes of an injunction. I think it's got to be either one or the other just as a matter of logic. And as a result, I think his reliance on the Delaware sportsman case and Collins versus Yellen are misguided. In Cochran, footnote 16, the en banc court specifically said Collins' causal harm requirement applies when a litigant is attempting to invalidate, or void was the word that the court used, an agency action that has already taken place. But that's not what we're doing here. What we're doing is what they were trying to do in Cochran, which was to avoid a tainted unconstitutional proceeding in the first place. And I think that these points, the Fifth Circuit's en banc precedent in Cochran and the Supreme Court's precedent in Axon explain why the motions panel, without noted dissent, granted us an injunction pending appeal and denied the NLRV's motion to dismiss. I think if we were not entitled to an injunction pending appeal or an injunction in the preliminary injunction posture, I don't think that that decision would have came out the way it did. Very quickly, on the Norris LaGuardia Act, Mr. Weiss cited a case that I guess just came out that we've had no chance to brief, and also a couple other cases that weren't cited in the briefs. If the court has any questions on that point in particular, we would welcome the opportunity to submit briefing on it. I think the problem with the Norris LaGuardia Act argument is twofold. First is that the terms of the statute just don't apply to a constitutional challenge under Axon. And then the second is that under the Kansas City South Southern Transportation case that we cited, when the facts are not in dispute, there is no obligation under the Norris LaGuardia Act to hold a hearing about the facts. Unless the court has further questions for me, we would ask that the effective denial of our request for a preliminary injunction be reversed. Thank you, counsel. Both of these cases are under submission. Thank you.